UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOSE M. RIOS and KIMBERLY M. MARRERO,   CIVIL ACTION NO.

                                 Plaintiffs,

       -against-                                 **COMPLAINT &**
                                                 **JURY DEMAND**

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION
- OTISVILLE CORRECTIONAL FACILITY,
KATHERINE G. GERBING, SUPERINTENDENT,
sued in her individual capacity, PETER EARLY,
DEPUTY  SUPERINTENDENT OF SECURITY,
sued in his individual capacity, LIEUTENANT
JAMES D. POSTON, sued in his individual capacity,
INVESTIGATOR ANDRES ROMAN, sued in his
individual capacity, INVESTIGATOR LIZZETTE
MALAVE, sued in her individual capacity, whom
are members of the New York State Department
 of Corrections and Community Supervision, sued
in their individual capacity, INVESTIGATOR JOSEPH
W. GALLAGHER, sued in his individual capacity,
who is a member of the New York State Police,
                                 Defendants.
-----------------------------------------------------------------X

       Plaintiffs, Jose M. Rios and Kimberly M. Marrero, by their attorneys, Dupee & Monroe, P.C.,

allege upon information and belief, as follows:

## PRELIMINARY STATEMENT

       Plaintiffs, Jose M. Rios (hereinafter "Rios") and Kimberly M. Marrero (hereinafter

"Marrero") bring this action pursuant to, among other things, 42 U.S.C. § 2000-e *et seq*, Title VII

of the Civil Rights Act of 1964; 42 U.S.C. §§ 1981 & 1983 and the Equal Protection and Due

Process Clauses found in the Fourth and Fourteenth Amendments of the United States Constitution

to redress the deprivation(s) of plaintiffs' federally protected rights.

       FIRST:  On the afternoon of Saturday, February 6, 2016 a search was conducted of all

Correction Officers reporting for the 3:00 p.m. to 11:00 p.m. shift. Rios and Marrero - - Correction Officers assigned to the Otisville Correction Facility - - were subject to an in-depth search of the person and belongings; interrogated by the defendants; taken into custody; and charged with Promoting Prison Contraband in the Second Degree in violation of Penal Law § 205.20(2) on the basis of their race and in the absence of probable and/or justifiable cause.

SECOND: Subsequent to their arrest(s) plaintiffs were placed on administrative leave; exposed to public embarrassment and ridicule; and subjected to a baseless prosecution. Having obtained a favorable determination of their criminal prosecution(s), Rios and Marrero bring suit for violations of their federally protected constitutional rights.

## JURISDICTION

THIRD: This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under 42 U.S.C. § 2000-e; 42 U.S.C. §§ 1981 & 1983; and the Equal Protection and Due Process Clauses found within the Fourth and Fourteenth Amendments of the United States Constitution; and therefore involves the resolution of federal question(s).

FOURTH: Pursuant to 28 U.S.C. § 1391(b) venue is proper as the acts complained of occurred in the County of Orange, State of New York.

FIFTH: This Court has subject matter jurisdiction over the claims alleged against the defendants under 42 U.S.C. § 2000-e; 42 U.S.C. §§ 1981 & 1983; and the Equal Protection and Due Process Clauses found within the Fourth and Fourteenth Amendments of the United States Constitution as Congress has explicitly abrogated 11th Amendment immunity for such claims.

SIXTH: This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 as this action seeks to redress the deprivation of federally protected constitutional rights committed by the defendants under Color of State Law.

SEVENTH: Administrative claims were filed with the New York State Division of Human Rights and the U.S. Equal Employment Opportunity Commission on August 22, 2016. Exhibits "A" & "B" The Equal Employment Opportunity Commission issued dismissals and Notices of Rights to plaintiffs Rios and Marrero dated November 21, 2016. Exhibit "C" Within ninety (90) days, Rios and Marrero filed their original Summons and Complaint with the Clerk of the United States District Court, Southern District of New York, vicinage of White Plains on or about February 15, 2017.

EIGHTH: This Court has jurisdiction over the defendant New York State Department of Corrections and Community Supervision (hereinafter "DOCCS") as a municipal corporation and political subdivision organized and existing under the laws of the State of New York which maintains a correctional facility within the Village of Otisville, County of Orange, State of New York.

NINTH: This Court has personal jurisdiction over the defendant Kathleen G. Gerbing (hereinafter "Gerbing") because, upon information and belief, she is an individual domiciled in the County of Richmond, State of New York.

TENTH: This Court has personal jurisdiction over the defendant Peter Early (hereinafter "Early") because, upon information and belief, he is an individual domiciled in the County of Delaware, State of New York.

ELEVENTH: This Court has personal jurisdiction over the defendant James D. Poston (hereinafter "Poston") because, upon information and belief, he is an individual domiciled in the County of Ulster, State of New York.

TWELFTH: This Court has personal jurisdiction over the defendant Andres Roman (hereinafter "Roman") because, upon information and belief, he is an individual domiciled in the County of Orange, State of New York.

THIRTEENTH: This Court has personal jurisdiction over the defendant Lizzette Malave (hereinafter "Malave") because, upon information and belief, she is an individual domiciled in the County of Orange, State of New York.

FOURTEENTH: This Court has personal jurisdiction over the defendant Joseph W. Gallagher (hereinafter "Gallagher") because, upon information and belief, he is an individual domiciled in the County of Orange, State of New York.

## PARTIES

FIFTEENTH: Rios is Hispanic and of Puerto Rican descent and is a United States Citizen. Rios has been employed as a Correction Officer with defendant DOCCS since June 9, 1997. Rios is currently assigned as a Correction Officer at DOCCS' Otisville Correctional Facility. At all relevant times hereinafter mentioned, Rios was and is a resident of the County of Orange, State of New York.

SIXTEENTH: Marrero is Hispanic and of Puerto Rican descent and is a United States Citizen. At all times relevant herein, she was a Correction Officer trainee assigned to defendant's DOCCS' Otisville Correctional Facility up until the date of her wrongful termination on or about April 12, 2016.

SEVENTEENTH: At all relevant times hereinafter mentioned, Marrero was and is a resident of the County of Orange, State of New York.

EIGHTEENTH: Defendant, Gerbing was, and at all times relevant herein, the Superintendent of the Otisville Correctional Facility. At all times hereinafter mentioned, defendant Gerbing was acting within the scope of her employment and under Color of State Law.

NINETEENTH: Defendant, Early was, and at all times hereinafter herein, employed by defendant DOCCS as the Deputy Superintendent of Security for the Otisville Correctional Facility.

At all times hereinafter mentioned, defendant Early was acting within the scope of his employment and under Color of State Law.

TWENTIETH: Defendant, Poston was, and at all times hereinafter herein, employed by defendant DOCCS as a Lieutenant assigned to the Otisville Correctional Facility.  At all times hereinafter mentioned, defendant Poston was acting within the scope of his employment and under Color of State Law.

TWENTY-FIRST: Defendant Roman was, and at all times hereinafter herein, employed by defendant DOCCS as an Investigator with the Office of Special Investigations.  At all times hereinafter mentioned, defendant Roman was acting within the scope of his employment and under Color of State Law.

TWENTY-SECOND: Defendant Malave was, and at all times hereinafter herein, employed by defendant DOCCS as an Investigator with the Office of Special Investigations.  At all times hereinafter mentioned, defendant Malave was acting within the scope of her employment and under Color of State Law.

TWENTY-THIRD: Defendant Gallagher was, and at all times hereinafter after, a member of the New York State Police holding the rank of Investigator.  At all times hereinafter mentioned, defendant Gallagher was acting within the scope of his employment and under Color of State Law.

## FACTUAL ALLEGATIONS

TWENTY-FOURTH: Plaintiff Rios has been employed as a Correction Officer with defendant DOCCS since June 9, 1997 and was a vested union member of the New York State Correctional Officers & Police Benevolent Association, Inc.

TWENTY-FIFTH: Plaintiff Rios was and is assigned by defendant DOCCS to the Otisville Correctional Facility located at 57 Sanitorium Avenue, Village of Otisville, County of Orange, State

of New York.

TWENTY-SIXTH: Plaintiff Marrero was employed by defendant DOCCS as a Correction Officer Trainee beginning on April 13, 2015.

TWENTY-SEVENTH: Plaintiff Marrero was wrongfully terminated as a Correction Officer Trainee on or about April 12, 2016.

TWENTY-EIGHTH: Plaintiffs Rios and Marrero are Hispanic and are of Puerto Rican descent and are United States Citizens.

TWENTY-NINTH: That defendant DOCCS had at all relevant times hereinafter mentioned, had a facially neutral policy and/or procedure for the searching of DOCCS employees. Exhibit "D"

THIRTIETH: That defendant DOCCS' Directive No. 4936, § 6.21 (Exhibit "D") states in relevant part:

> Any employee on facility property or while on duty is subject to search. All employees may routinely be subjected to a metal detector search and packages and other articles carried into a facility may be routinely inspected. Pat or strip searches may be conducted only on the order of the Superintendent or Acting Superintendent and must be supervised by a uniformed supervisor or a non-uniformed employee of a higher grade than the employee being searched. Any article that may not be properly taken into or out of the facility may be confiscated and turned over to the Officer in Charge for appropriate disposition. Refusal by an employee to submit to a search is insubordination, may be cause to refuse him/her entrance to the facility, and may constitute grounds for disciplinary action. The Department's policy and procedures concerning such searches are contained in Directive #4936, "Search of DOCCS Employees."

THIRTY-FIRST: That defendant DOCCS, at all times hereinafter mentioned had a written policy and/or procedure for testing substances suspected of being contraband drugs. Exhibit "E"

THIRTY-SECOND: That defendant DOCCS' Directive No. 4938 (Exhibit "E") provides:

> When a substance is found which is suspected of being a contraband drug the following steps shall be taken:

(a)   Place the substance in a sealed container and label it with the
following information:

   (1)   Dated and time found;
   (2)   Place where found; and
   (3)   Name and badge number of the officer, security supervisor,
          or executive team member with peace officer status or name
          and title of the employee (if civilian) finding the substance.

(b)   Initiate a "Request for Test of Suspected Contraband Drugs" (see
section 1010.8(a), Attachment A, Form #2080) to include details of
"Circumstances Leading to Request." Each person handling the
suspected substance shall make an appropriate notation on the
form to document the action taken as well as the chain of custody
of the substance until it is identified or, if applicable, placed in control
of the Inspector General's Narcotics staff or a police agency or
State Police Laboratory.

(c)   If the substance is not to be identified immediately, it shall be
secured in a locked contraband locker or other appropriate secure
Place with limited documented access.

(d)   If the substance is in tablet or capsule form, it shall be inspected at
the facility pharmacy for possible identification.

(e)   If the substance has not bee conclusively identified at the facility
pharmacy, it shall be tested by the use of the narcotics identification
kit (NIK®) manufactured by Public Safety, Inc. Always begin
Polytesting with Test A and continue from test to test until a
positive or negative result is obtained. Tests, E, L, M, N, P, Q
and R are exceptions to this rule and are designed as standalone
tests (see section 1010.8 (c), Attachment C, NIK® Tests list).

(f)   The individual performing the test shall have been appropriately
trained in the use of the testing materials and shall follow the
procedures recommenced by the manufacturer. The testing
sequence followed and the results obtained shall be noted on the
"Contraband Test Procedure" form (see section 1010.8(b),
Attachment B, Form #2081).

(g)   Any substance remaining after testing at the facility may, but need
Not, be forwarded to a State Police laboratory for further testing.
(See section 1010.6 of this directive.)

THIRTY-THIRD: That on or about Saturday, February 6, 2016 at approximately 3:00 p.m.

the plaintiffs Rios and Marrero reported for their regularly scheduled 3:00 p.m. - 11:00 p.m. shift.

THIRTY-FOURTH: Upon arriving at the Otisville Correctional Facility on the aforementioned date and time, plaintiffs Rios and Marrero together with approximately 33 other Correction Officers/staff reporting for the same shift, were subject to a random search of their persons and/or belongings which was carried out at the behest or direction of defendants Gerbing, Early, Poston, Roman, and/or Malave.

THIRTY-FIFTH: That of the approximately thirty-five officers/staff reporting for duty on February 6th, at least six individuals were in possession of non-prescription tablets/capsules comprising of aspirin, vitamins, supplements and/or dietary pills.

THIRTY-SIXTH: That of the six individuals found in possession of tablets/capsules, four were Caucasian and two were Hispanic - - plaintiffs Rios and Marrero.

THIRTY-SEVENTH: That the four Caucasian officers/staff found to be in possession of unidentified substances in the form of tablets/capsules were permitted by defendants Gerbing, Early, Poston, Roman and/or Malave to maintain possession of said substances and begin their scheduled shift without further questioning, detention, suspension or arrest.

THIRTY-EIGHTH: That simultaneously thereto, plaintiffs Rios and Marrero - - the two Hispanic Correction Officers - - were subject to and in-depth search of their persons and belongings; interrogated by prison officials and defendant Gallagher; taken into custody by defendant Gallagher; and charged with promoting prison contraband in the Second Degree in violation of Penal Law § 205.20(2). Exhibit "F". That none of the written protocol or procedures outlined in DOCCS' Directive 4938 (Exhibit "E") were followed before a decision was made to arrest plaintiffs Rios and Marrero and charge them with Promoting Prison Contraband in the Second Degree in violation of Penal Law § 205.20(2).

THIRTY-NINTH: New York Penal Law § 205.20 reads in relevant part:

> A person is guilty of promoting prison contraband in the Second Degree when:
>
> 2.   Being a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any contraband.

FORTIETH: That the offense of promoting prison contraband in the Second Degree is a Class "A" Misdemeanor.

FORTY-FIRST: That defendant DOCCS had a penalogical interest in maintaining the safety and order of its correctional facility by restricting the use or possession of medications or narcotics in the possession of correctional officers/staff.   Exhibits "D" & "E"

FORTY-SECOND: That Employees' Manual §§ 7.12 & 7.13 (Exhibit "G") addressed the possession of "intoxicants, opiates, narcotics or other substances producing similar effects" by Correction Officers/staff, but was devoid of any specific rule or regulation prohibiting the use or possession of non-prescription tablets and/or capsules by correctional officers/staff.

FORTY-THIRD: That Penal Law § 205.00(3) defines "contraband" to mean "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order."

FORTY-FOURTH: That at all times hereinafter mentioned, plaintiff Rios was found by defendants to be in possession of one dose of the vitamin/supplements known as Doterra Life Long Vitality Pack which comprised of twelve (12) separate capsules - - considered by the manufacturer to be one dose.  A copy of the ingredients for the supplements found in plaintiff Rios' possession is attached as Exhibit "H".

FORTY-FIFTH: That at all times hereinafter mentioned, plaintiff Marrero was found to be in possession of a bottle containing approximately seventy (70) diet capsules known as HCG

Activator.  A copy of the ingredients contained in the diet capsules known as HCG Activator is attached as Exhibit "I".

FORTY-SIXTH: That Employee's Manual §§ 7.12 & 7.13 (Exhibit "G") read in relevant part:

> 1.12 "All intoxicants, regardless of form and nature, except those approved for specific medicinal or sacramental purposes, are prohibited on the grounds of any facility of the Department, except in State owned residences of employees or with the approval of the Superintendent, an employee recreation or picnic areas.  When such beverages are kept for medical or religious purposes, the facility physician and Chaplain respectively are responsible for their proper care, storage and use."

> 7:13 "Control substances are not permitted to be possessed, stored, or consumed in any facility, except upon a valid order or prescription from a qualified physician.  Under no circumstances shall inmates have access to opiates, narcotics, or other substances producing similar effects."

FORTY-SEVENTH: That the dietary/vitamin supplements found in the possession of plaintiffs Rios and Marrero were/are not "intoxicants" . . . "opiates, narcotics, or other substances producing similar effects."  Exhibit "G"

FORTY-EIGHTH: That as a matter of custom, practice and/or procedure inmates at all relevant times hereinafter mentioned, were permitted to purchase, possess and/or consume vitamins and/or dietary supplements which were for sale at the DOCCS' commissary.  Exhibit "J"

FORTY-NINTH: That had the defendants followed the procedures specified in Directive No. 4938 (Exhibit "E") and conducted a proper investigation in good faith before arresting plaintiffs, they would have known, and should have known that plaintiffs were in possession of diet and/or vitamin supplements and otherwise innocent of the crime(s) charged.  Exhibit "F"

FIFTIETH: That plaintiffs Rios and Marrero were directed by defendant Gallagher to appear

at an arraignment before the Town of Mount Hope Justice John Goldsmith on February 18, 2016 at 7:00 p.m. *See,* Exhibit "F"

FIFTY-FIRST: That the charges brought against the plaintiff Rios and Marrero (Exhibit "F") were successfully adjudicated and dismissed in favor of the plaintiffs.

FIFTY-SECOND: That plaintiff Rios was suspended without pay by defendant DOCCS on February 8, 2016 pending the outcome of the aforementioned criminal charges. That plaintiff, Marrero was suspended with pay on February 8, 2016 pending the outcome of the aforementioned criminal charges.

FIFTY-THIRD: That plaintiff Rios' status as a peace officer was revoked requiring plaintiff to surrender his firearm to DOCCS.

FIFTY-FOURTH: That at plaintiffs' arraignment in the Town of Mount Hope Justice Court on the evening of February 18, 2016 they were advised by the Honorable John Goldsmith that the charge(s) of Promoting Prison Contraband in the Second Degree in violation of Penal Law § 205.20(2) (Exhibit "F") had not been filed with the Town of Mount Hope Justice Court and that the Court otherwise lacked jurisdiction to arraign the plaintiffs.

FIFTY-FIFTH: Upon information and belief, the charge(s) of Promotion Prison Contraband in the Second Degree in violation of New York Penal Law § 205.20(2) were never filed by defendant Gallagher with the Town of Mount Hope Justice Court.

FIFTY-SIXTH: That on or about March 15, 2016 Chief Assistant District Attorney Christopher P. Borek from the Orange County District Attorney's office issued a certification pursuant to Criminal Procedure Law § 160.50(3)(I) electing not to prosecute plaintiff Rios (Exhibit "K") or Marrero (Exhibit "L") and directing that all photographs, fingerprints and other records pertaining to the plaintiffs' arrest be sealed or otherwise handled pursuant to Criminal Procedure

Law § 160.50(1)(a)(b)(c)&(d).

FIFTY-SEVENTH: That effective February 26, 2016 (Exhibit "M"), plaintiff Rios was reinstated with pay to his former position as a Correction Officer and reassigned to the Otisville Correctional Facility.  Plaintiff Rios was also reimbursed by defendant DOCCS for the loss wages incurred during his suspension period.

FIFTY-EIGHTH: That none of the Caucasian Correction Officers/staff found to be in possession of pills and/or capsules containing unknown substances on the afternoon of Saturday, February 6, 2016 were interrogated by correctional staff; questioned by members of the New York State Police; detained by members of the New York State Police or members of DOCCS' Office of Special Investigations; disciplined; reprimanded; deprived of their property or possessions including the pills/capsules found in their possession; subject to arrest; placed in handcuffs; fingerprinted or photographed by members of the New York State Police; charged with a crime(s); the subject of public embarrassment or ridicule; suspended from employment; had their status as peace officers revoked; required to surrender their weapon; or suspended or terminated from their position(s) as a correction officer(s).

FIFTY-NINTH: That the only factor which distinguished that plaintiffs Rios and Marrero from the other officers who were not subject to administrative discipline or arrest, was their race and/or national origin.  That plaintiffs Rios and Marrero had exemplary performance reviews from their immediate supervisors.

SIXTIETH: That defendant DOCCS, by and through its officers, agents, servants and/or employees violated plaintiff Rios and Marrero's rights under Title VII of the Civil Rights Act of 1964, by enforcing a facially neutral policy and/or procedure (Exhibits "D" & "E") in a racially discriminatory fashion by targeting and/or profiling the plaintiffs based upon their race and national

origin as Hispanic/Puerto Rican employees.

SIXTY-FIRST: That defendants Gerbing, Early, Poston, Roman, Malave and Gallagher while acting in concert and under Color of State Law, did violate plaintiffs' rights, privileges and liberties bestowed upon the plaintiffs by the United States Constitution and in particular the Fourth, Fifth and Fourteenth Amendments together with the federal statutory protections afforded to plaintiffs under 42 U.S.C. § 2000-e et seq. & 42 U.S.C. §§ 1983 & 1985.

SIXTY-SECOND: That defendants' decision to question, detain, arrest and administratively punish plaintiffs were based in whole or in part upon plaintiffs' Hispanic race and/or Puerto Rican national origin.

SIXTY-THIRD: That as a result of subsequent media attention, plaintiffs' reputation(s) have been permanently compromised and their credibility and safety in the presence of the public and/or inmates have been undermined. That even though the criminal charges were successfully dismissed, a Google search  continues to reveal information relating to plaintiffs' arrest and prosecution.

SIXTY-FOURTH: Pursuant to Federal Rules of Civil Procedure Rule 38, plaintiffs Rios and Marrero request a trial by jury.

## COUNT I

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AGAINST DEFENDANT DOCCS

SIXTY-FIFTH: This plaintiff repeats, reiterates and reallege with the same force and effect as if here more fully set  forth  at  length,  each  and every allegation contained in paragraphs numbered "FIRST" through "SIXTY-FOURTH".

SIXTY-SIXTH:  That Title VII of the Civil Rights Act of 1964, as Amended, prohibits "discrimination against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race . . ." 42 U.S.C. § 2000(e)-2(a)(1).

SIXTY-SEVENTH: Defendant DOCCS, by and through its agents, servants, and/or employees subjected plaintiffs Rios and Marrero to disparate treatment based on their Hispanic race and/or national origin with regards to the compensation, terms, conditions and privileges of their employment, namely by subjecting the plaintiffs to administrative discipline and/or summary arrest in the absence of just and/or probable cause as compared to plaintiffs' Caucasion counter-parts.

SIXTY-EIGHTH: That plaintiff Rios and Marrero's Hispanic race and/or national origin, places them within a protected class of individuals recognized by Title VII of the Civil Rights Act of 1964.

SIXTY-NINTH: That plaintiffs Rios and Marrero were/are qualified for their respective jobs and received high performance ratings from their immediate supervisors.

SEVENTIETH: That as a direct and proximate result of the actions and decisions made by the defendant DOCCS, by and through their agents, servants and/or employees plaintiffs Rios and Marrero were subject to an in-depth search of their persons and belongings; interrogated by prison officials and the New York State Police; handcuffed; arrested; taken into custody by the New York State Police; arrested and charged with Promoting Prison Contraband in the Second Degree in violation of Penal Law § 205.20(2); suspended with and without pay; subjected to public embarrassment and ridicule; deprived of their peace officer status; required to surrender their firearm; and in the case of plaintiff Marrero terminated from her employment as of April 12, 2016 (Exhibit "M"), all amounting and equating to adverse employment action(s) taken on behalf or at the behest of defendant, DOCCS.

SEVENTY-FIRST: The acts and decisions made by defendant, DOCCS' agents, servants and/or employees to arrest, to administratively suspend and/or terminate the plaintiffs constitute

adverse employment action(s) taken at the behest or on behalf of defendant DOCCS.

SEVENTY-SECOND: That the plaintiffs Rios and Marrero were subject to arrest, suspended from their employment and/or terminated for acts/conduct perpetrated by their Caucasian co-workers who were/are similarly situated employees outside plaintiffs' protective class.

SEVENTY-THIRD: That at all times hereinafter mentioned, the plaintiffs Rios and Marrero performed their duties as Correction Officers in a way that met and/or exceeded the legitimate expectations of the defendant DOCCS.

SEVENTY-FOURTH: That the plaintiffs Rios and Marrero's job performance ratings for the months/years leading up to February 6, 2016 met or exceeded the expectations of the defendant, DOCCS.

SEVENTY-FIFTH: That "but for" plaintiff Rios and Marrero's Hispanic race and/or natural origin, they would not have been arrested, suspended and/or terminated by the defendant DOCCS.

SEVENTY-SIXTH: That the decision made by defendant DOCCS by and through their agents, servants and/or employees to arrest, suspend and/or terminate the plaintiffs Rios and Marrero for identical conduct committed by plaintiffs' Caucasian co-employees was motivated by race.

SEVENTY-SEVENTH: That at all times hereinafter mentioned, defendants Gerbing, Early, Poston, Roman and Malave were the plaintiff(s) supervisors/superiors or in a position of authority with regards to the terms and conditions of the plaintiffs' employment and were directly and/or indirectly responsible for causing a tangible employment action to occur in the form of plaintiffs' arrest, suspension and/or termination.

SEVENTY-EIGHTH: That as a direct and proximate result of defendant DOCCS' violation of Title VII of the Civil Rights Act of 1964, plaintiffs, Rios and Marrero were caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, loss of opportunities for

advancement in their careers as Correction Officers, left with a permanent arrest record and otherwise suffered financial damages due to the loss and/or diminishment of pay and benefits associated with their career(s) as Correction Officers with the defendant DOCCS.

## COUNT II

### 42 U.S.C. § 1983 - FALSE ARREST

SEVENTY-NINTH: This plaintiff repeats, reiterates and reallege with the same force and effect as if here more fully set forth at length, each and every allegation contained in paragraphs numbered "FIRST" through "SIXTY-FOURTH" and "SIXTY-SIXTH" through "SEVENTY-EIGHTH".

EIGHTIETH: On or about Saturday, February 6, 2016 at approximately 3:00 p.m. defendants Gerbing, Early, Poston, Roman, Malave and/or Gallagher initiated and/or participated in the arrest of plaintiffs Rios and Marrero.

EIGHTY-FIRST: That before arresting Rios and Marrero, defendant Gallagher consulted with, upon information and belief, the defendants Gerbing, Early, Poston, Roman and/or Malave.

EIGHTY-SECOND: Defendants Gerbing, Early, Poston, Roman, Malave and/or Gallagher do not have probable cause to believe that plaintiffs Rios and Marrero had committed any crime. Put simply, plaintiffs Rios and Marrero did not engage in any conduct that warranted their detention and arrest, and these defendants knew or should have known, that probable cause did not exist for plaintiffs' arrest(s).

EIGHTY-THIRD: That had the defendants followed the procedures mandated in Directive No. 4938 § 1010.4 (Exhibit "E") and the definition of contraband found in Penal Law § 205.00(3) defendants would have known and/or should have known that plaintiffs Rios and Marrero were in possession of capsules/pills containing dietary supplements and/or vitamins.

EIGHTY-FOURTH: That inmates confined to the Otisville Correctional Facility are permitted to possess dietary supplements and/or vitamins and are permitted to purchase such items/substances in pill and/or capsule form at the facility's commissary.

EIGHTY-FIFTH: That at the same time, plaintiffs' Caucasian co-workers were permitted by defendants on the aforementioned date and time to enter the Otisville Correctional Facility with pills and/or capsules containing unknown substances without being detained, suspended or arrested.

EIGHTY-SIXTH: As a result of defendants' conduct, plaintiffs Rios and Marrero were detained, and at all times plaintiffs knew they were being detained. Moreover, plaintiffs Rios and Marrero did not consent to their confinement.

EIGHTY-SEVENTH: That defendants' investigations were baseless, motivated by race, devoid of due process, incomplete and conducted in bad faith.

EIGHTY-EIGHTH: Because defendants did not have probable cause to believe that plaintiffs Rios or Marrero had committed a crime, their arrest was unreasonable within the meaning of the Fourth and Fourteenth Amendments of the United States Constitution.

EIGHTY-NINTH: That as a direct/proximate result of plaintiffs Rios and Marrero's false arrest, the plaintiffs were caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, and financial damages due to the loss of pay and benefits associated with future advancements as Correction Officer(s) with the defendant DOCCS.

## COUNT III

### 42 U.S.C. § 1983 - MALICIOUS PROSECUTION

NINETIETH: This plaintiff repeats, reiterates and reallege with the same force and effect as if here more fully set forth at length, each and every allegation contained in paragraphs numbered "FIRST" through "SIXTY-FOURTH", "SIXTY-SIXTH" through "SEVENTY-EIGHTH"

and "EIGHTIETH" through "EIGHTY-NINETY".

NINETY-FIRST: On Saturday, February 6, 2016 at approximately 3:00 p.m. plaintiffs Rios and Marrero were arrested without probable cause.

NINETY-SECOND: As a result of their arrest, the defendants prosecuted and punished the plaintiffs for the crime(s) of Promoting Prison Contraband in the Second Degree in violation of Penal Law § 205.20(20. In prosecuting the plaintiffs, the Orange County District Attorney's office and defendant Gallagher relied upon false information provided by the defendants, Gerbing, Early, Poston, Roman and/or Malave.

NINETY-THIRD: That defendants Gerbing, Early, Poston, Roman, and/or Malave acted intentionally or grossly negligent in furnishing defendant Gallagher with false and/or incomplete information which lead to plaintiffs Rios and Marrero's prosecution. That defendant Gallagher was unaware that inmates were permitted to possess vitamins and/or dietary supplements.

NINETY-FOURTH: At all times relevant hereinafter mentioned, defendants Gerbing, Early, Poston, Roman, Malave and/or Gallagher acted with malice and with the deliberate indifference for the truth. Defendants knew, or should have known, that plaintiff Rios and Marrero were actually innocent of the offense(s) for which they were charged.

NINETY-FIFTH: Following the commencement of their criminal prosecution, plaintiffs Rios and Marrero remained detained as a result of their arrest. Plaintiffs were also placed on administrative leave and subject to public ridicule and insult. Plaintiffs were also required to appear in Court to answer baseless charges originally believed to have been filed against them. Moreover, plaintiffs status as peace officers together with their ability to legally possess a firearm was revoked.

NINETY-SIXTH: Ultimately, the criminal prosecution commenced against plaintiffs Rios and Marrero terminated in their favor when the Orange County District Attorney's office issued

certificates pursuant to Criminal Procedure Law § 160.50(3)(I) urging the State Police "not" to file said charges with the Town of Mount Hope Justice Court and otherwise refusing to prosecute the plaintiffs.  Exhibits "K" & "L"

NINETY-SEVENTH: That as a direct and proximate result of defendants' malicious prosecution, the plaintiffs Rios and Marrero were caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits and financial damages due to the loss of pay and benefits associated with future advancements as Correction Officer(s) with the defendant DOCCS.

### COUNT IV

### FOURTEENTH AMENDMENT - PROCEDURAL DUE PROCESS

NINETY-EIGHTH:  This plaintiff repeats, reiterates and reallege  with  the same force and effect as if here more fully set forth at length,  each  and every allegation contained in paragraphs numbered "FIRST" through "SIXTY-FOURTH",  "SIXTY-SIXTH" through "SEVENTY-EIGHTH",  "EIGHTIETH" through "EIGHTY-NINETY" and "NINETY-FIRST" through "NINETY-SEVENTH".

NINETY-NINTH:. That plaintiffs Rios and Marrero had property/liberty interest(s) in their position(s) as Correction Officers and in not being falsely arrested or maliciously prosecuted on the basis of their race.

ONE HUNDREDTH: That the Fourteenth Amendment's Due Process Clause protected plaintiffs Rios and Marrero from defendants' efforts to deprive them of their life, liberty or property without due process of law.

ONE HUNDREDTH-FIRST: That plaintiffs Rios and Marrero's protected interests arise directly from the Due Process Clause itself and from statutes, regulations and/or polices enacted by defendant  DOCCS and in particular Directive Nos. 4936 (Exhibit "D") & 4938 (Exhibit "E").

ONE HUNDREDTH-SECOND: That plaintiffs Rios and Marrero had a legitimate interest and expectation that their rights afforded to them by the Due Process Clause and from the statutes, regulations, and/or polices of the defendant DOCCS would be protected.

ONE HUNDREDTH-THIRD: That plaintiffs Rios and Marrero were not afforded an opportunity to be heard at a meaningful time and manner prior to defendants' decision to falsely arrest, maliciously prosecute and/or suspend them for offenses in which they were otherwise innocent of having committed.

ONE HUNDREDTH-FOURTH: That the individuals responsible for making the decision to arrest, prosecute and/or suspend the plaintiffs were made by the defendants Gerbing, Early, Poston, Roman and/or Malave who were motivated by racial animus who had no interest in affording plaintiffs the minimal guarantees of Procedural Duc Process.

ONE HUNDREDTH-FIFTH: That as a direct and proximate result of defendants' violation of plaintiff's Procedural Due Process rights; the plaintiffs Rios and Marrero were caused to suffer shame; humiliation; loss of career prospects; loss of financial benefits; and financial damages due to the loss of pay and benefits associated with future advancements as Correction Officer(s) with the defendant DOCCS.

**COUNT V**

**42 U.S.C. § 1981 &**

**EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT**

ONE HUNDREDTH-SIXTH: This plaintiff repeats, reiterates and reallege with the same force and effect as if here more fully set forth at length, each and every allegation contained in paragraphs numbered "FIRST" through "SIXTY-FOURTH", "SIXTY-SIXTH" through "SEVENTY-EIGHTH", "EIGHTIETH" through "EIGHTY-NINETY", "NINETY-FIRST" through

"NINETY-SEVENTH" and "NINETY-NINTH" through "ONE HUNDREDTH-FIFTH".

ONE HUNDREDTH-SEVENTH: That 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment prohibits governmental decision makers such as the defendants Gerbing, Early, Poston, Roman, Malave and/or Gallagher from treating citizens differently on the basis of their race or classifying individuals on the basis of their race.

ONE HUNDREDTH-EIGHTH: That defendants Gerging, Early, Poston, Roman, Malave and/or Gallagher arrested, prosecuted and/or suspended plaintiffs Rios and Marrero for the possession of pills/capsules containing vitamins and/or dietary supplements at a time when similar conduct perpetrated by their Caucasian counter-parts was ignored.

ONE HUNDREDTH-NINTH: That defendants' unequal treatment of the plaintiffs was the result of intentional or purposeful discrimination on the basis of plaintiffs' race.

ONE HUNDREDTH-TENTH: That defendants' actions constituted a "irrational and wholly arbitrary" discrimination of the plaintiffs on the basis of their Hispanic race.

ONE HUNDREDTH-ELEVENTH:  That as a direct and proximate result of defendants' violation of plaintiff's Equal Protection rights; the plaintiffs Rios and Marrero were caused to suffer shame, humiliation, loss of career prospects; loss of financial benefits; and financial damages due to the loss of pay and benefits associated with future career advancements as Correction Officer(s) with the defendant DOCCS.

WHEREFORE, the plaintiffs Jose M. Rios and Kimberly M. Marrero, pray that this Honorable Court:

1.    Accept jurisdiction over this case;

2.    Impanel a jury to hear and decide this matter;

3.    Award plaintiffs compensatory damages as against all defendants and punitive

damages as against all individual defendants;

4.    Award plaintiffs reasonable costs, disbursements and interest associated with this litigation including attorneys' fees pursuant to 42 U.S.C. § 1988 & 18 U.S.C. § 1964; and

5.    Order any other further relief it deems just and proper.

Dated: Goshen, New York
       January 30, 2017

Yours, etc.,

DUPEE & MONROE, P.C.
Attorneys for Plaintiffs

By: _____
      JAMES E. MONROE, ESQ. (JM2266)

Office & P.O. Address
211 Main St., P.O. Box 470
Goshen, New York 10924
845-294-8900
Email: info@dupeemonroelaw.com

TO:    New York State Police
       c/o Investigator Joseph W. Gallagher
       55 Crystal Run Rd.
       Middletown, NY 10941-9755

       Kathleen G. Gerbing, Superintendent
       c/o Otisville Correctional Facility
       57 Sanitorium Ave.
       Otisville, NY 10963

       Peter Early, Deputy Superintendent of Security
       c/o Otisville Correctional Facility
       57 Sanitorium Ave.
       Otisville, NY 10963

       James D. Poston, Lieutenant
       c/o Otisville Correctional Facility
       57 Sanitorium Ave.
       Otisville, NY 10963

Andres Roman, Investigator
c/o Otisville Correctional Facility
57 Sanitorium Ave.
Otisville, NY 10963

Lizzette Malave, Investigator
c/o New York State Corrections and Community Supervision
Office of Special Investigations/Harriman State Campus
1220 Washington Ave.
Albany, NY 12226

New York State Corrections and Community Supervision
Office of Special Investigations/Harriman State Campus
1220 Washington Ave.
Albany, NY 12226

The State of New York
Attorney General Office
120 Broadway, 24th fl.
New York, NY 10271

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOSE M. RIOS and KIMBERLY M. MARRERO,

                              Plaintiffs,

      -against-

NEW YORK STATE CORRECTIONS AND
COMMUNITY SUPERVISION - OTISVILLE
CORRECTIONAL FACILITY, KATHERINE G.
GERBING, SUPERINTENDENT, sued in her
individual capacity, PETER EARLY, DEPUTY
SUPERINTENDENT OF SECURITY, sued in his
individual capacity, LIEUTENANT JAMES D.
POSTON, sued in his individual capacity,
INVESTIGATOR ANDRES ROMAN, sued in his
individual capacity, INVESTIGATOR LIZZETTE
MALAVE, sued in her individual capacity, whom
are members of the New York State Corrections and
Community Supervision, sued in their individual
capacity, INVESTIGATOR JOSEPH W. GALLAGHER,
sued in his individual capacity, who is a member of the
New York State Police,

                              Defendants.
-----------------------------------------------------------X

ECF CASE

Civil Action No.

**VERIFICATION**

STATE OF NEW YORK    )
                          ) SS.:
COUNTY OF ORANGE    )

      JOSE M. RIOS, being duly sworn, deposes and says:

      That I am one of the plaintiffs and have read the foregoing complaint and knows the content

thereof; that same is true to his own knowledge, except as to the matters therein stated to

be alleged upon information and belief, and as to those matters he believes them to be true.

JOSE M. RIOS

Sworn to before me this

30th day of January, 2017.

NOTARY PUBLIC

LISA LEAR
Notary Public, State of New York
No. 5036826
Qualified in Orange County
Commission Expires Dec. 12, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOSE M. RIOS and KIMBERLY M. MARRERO,                    ECF CASE

                                                          Civil Action No.
                                     Plaintiffs,

          -against-                                       **VERIFICATION**

NEW YORK STATE CORRECTIONS AND
COMMUNITY SUPERVISION - OTISVILLE
CORRECTIONAL FACILITY, KATHERINE G.
GERBING, SUPERINTENDENT, sued in her
individual capacity, PETER EARLY, DEPUTY
SUPERINTENDENT OF SECURITY, sued in his
individual capacity, LIEUTENANT JAMES D.
POSTON, sued in his individual capacity,
INVESTIGATOR ANDRES ROMAN, sued in his
individual capacity, INVESTIGATOR LIZZETTE
MALAVE, sued in her individual capacity, whom
are members of the New York State Corrections and
Community Supervision, sued in their individual
capacity, INVESTIGATOR JOSEPH W. GALLAGHER,
sued in his individual capacity, who is a member of the
New York State Police,

                                     Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF ORANGE           )

          KIMBERLY M. MARRERO, being duly sworn, deposes and says:

          That I am one of the plaintiffs and have read the foregoing complaint and knows the content

thereof; that same is true to her own knowledge, except as to the matters therein stated to

be alleged upon information and belief, and as to those matters she believes them to be true.

KIMBERLY M. MARRERO

Sworn to before me this

30th day of January, 2017.

NOTARY PUBLIC

LISA LEAR
Notary Public, State of New York
No. 5036826
Qualified in Orange County
Commission Expires Dec. 12, 2018