UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JOSE M. RIOS and KIMBERLY M. MARRERO,       :
                                            :
                  Plaintiffs,               :
                                            :
              - against -                   :
                                            :
NEW YORK STATE DEPARTMENT OF                :     17 CV 01148 (CS)
CORRECTIONS AND COMMUNITY                   :
SUPERVISION - OTISVILLE CORRECTIONAL        :
FACILITY, et al.,                           :
                                            :
                  Defendants.               :
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**


                                BARBARA D. UNDERWOOD
                                Attorney General of the
                                State of New York
                                <u>Attorney for the Defendants</u>
                                28 Liberty - 18th Floor
                                New York, New York 10005
                                (212) 416-8118


JULINDA DAWKINS
Assistant Attorney General
       <u>of Counsel</u>

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

STANDARD OF REVIEW ........................................................................................................6

ARGUMENT ..............................................................................................................................7

POINT I         PLAINTIFFS FAIL TO ESTABLISH DISCRIMINATION ON THE
BASIS OF NATIONAL ORIGIN ...........................................................7

    A. Plaintiffs Cannot Establish a Prima Facie Case of Discrimination Because There Is
No Evidence Raising An Inference of Discrimination Surrounding Their Arrests and
Suspensions and Officer Marrero's Termination.................................................................7

    B. Defendants Decision Was Legitimately Based and Plaintiffs Have Adduced No
Evidence Demonstrating that the Decision Was Pretextual. ...............................................11

POINT II       PLAINTIFF'S FALSE ARREST CLAIM FAILS AS A MATTER OF LAW.....13

    A. Probable Cause supports Plaintiffs' Arrests on February 6, 2016 ......................................13

    B. Defendants Supt. Gerbing and DSS Early Were Not Personally Involved in Plaintiffs'
Arrests. ................................................................................................................................16

POINT III      PLAINTIFFS' MALICIOUS PROSECUTION CLAIM FAILS AS A
MATTER OF LAW .................................................................................17

POINT IV     PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM REQUIRES
DISMISSAL .............................................................................................19

POINT V      PLAINTIFF'S SECTION 1981 CLAIM IS BARRED BECAUSE SECTION
1983 IS THE EXCLUSIVE REMEDY AGAINST STATE ACTORS ...............21

POINT VI     PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS.....................................21

POINT VII     DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ......................23

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES

**Case**                                                                                      **Page(s)**

Abdu-Brisson v. Delta Air Lines, Inc.,
239 F.3d 456 (2d Cir. 2001) ............................................................................... 7

Amore v. Novarro,
624 F.3d 522 (2d Cir. 2010) ............................................................................. 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ............................................................................................ 6

Annis v. Cty of Westchester,
136 F.3d 239 (2d Cir. 1998) ............................................................................. 22

Anthony v. City of N.Y.,
339 F.3d 129 (2d Cir. 2003) ............................................................................. 23

Ashcroft v. Iqbal,
566 U.S. 662 (2009) .......................................................................................... 17

Barton v. City of Bristol,
294 F. Supp.2d 184 (D.Conn. 2003) ................................................................. 20

Bass v. Jackson,
790 F.2d 260 (2d Cir. 1986) ............................................................................. 17

Bernard v. United States,
25 F.3d 98 (2d Cir. 1994) ................................................................................. 14

Bleiwas v. City of N.Y.,
No. 15 Civ. 10046, 2017 WL 3524679 (S.D.N.Y. Aug. 15, 2017) ................. 24

Brooks v. Blank,
No. 10 Civ. 8124, 2014 WL 1495774 (S.D.N.Y. Mar. 31, 2014) ................... 10

Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.,
302 F.3d 83 (2d Cir. 2002) ................................................................................. 7

Cancel v. New York City Human Res. Admin.,
634 F. App'x 843 (2d Cir. 2015) ................................................................. 20-21

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ............................................................................................ 7

City of Cleburne v. Cleburne Living Ctr., Inc.,
473 U.S. 432 (1985) .......................................................................................... 21

Cleveland Bd. Of Educ. V. Loudermill,
    470 U.S. 532 (1985)...................................................................................................20

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001).........................................................................................14

Devenpeck v. Alford,
    543 U.S. 146 (2004) ............................................................................................ 14-15

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)..................................................................................13, 23

Espada v. Schneider,
    522 F. Supp. 2d 544 (S.D.N.Y. 2007)......................................................................19

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016).........................................................................................23

Finley v. Giacobbe,
    79 F.3d 1285 (2d Cir. 1996).......................................................................................21

Gaston v. City of N.Y.,
    851 F. Supp. 2d 780 (S.D.N.Y. 2012)................................................................ 18-19

Gibbs v. Consolidated Edison Co. of N.Y., Inc.,
    714 F. Supp. 85 (S.D.N.Y. 1989)...............................................................................11

Graham v. Long Island R.R.,
    230 F.3d 34 (2d Cir. 2000)...........................................................................................8

Grullon v. City of New Haven,
    720 F.3d 133 (2d Cir. 2013).......................................................................................16

Jean v. Montina,
    412 Fed. Appx. 352 (2d Cir. 2011)...................................................................... 24-25

Jett v. Dallas Independent School District,
    491 U.S. 701 (1989)...................................................................................................21

Khan v. Abercrombie & Fitch, Inc.,
    2003 WL 22149527 (S.D.N.Y. 2003).......................................................................10

Koch v. Town of Brattleboro,
    287 F.3d 162 (2d Cir. 2002).........................................................................................7

Koehler v. New York City,
    No. 04 Civ. 6929, 2005 WL 1123758 (S.D.N.Y. May 11, 2005)...........................20

Krause v. Bennett,
    887 F.2d 362 (2d Cir. 1989)............................................................14

Latrieste Restaurant v. Village of Port Chester,
    188 F.3d 65 (2d Cir. 1999)............................................................22

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)........................................................ 23-24

Loria v. Gorman,
    306 F.3d 1271 (2d Cir. 2002)........................................................15

Malley v. Briggs,
    475 U.S. 335 (1986)....................................................................23

Maron v. Cty. of Albany,
    166 Fed. Appx. 540 (2d Cir. 2006)................................................13

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)......................................................................8

McLee v. Chrysler Corp.,
    109 F.3d 130 (2d Cir. 1997)............................................................7

Monell v. NYC Dep. of Soc. Servs.,
    436 U.S. 658 (1978)....................................................................17

Narumanchi v. Bd. of Trustees,
    850 F.2d 70 (2d Cir. 1988)............................................................20

Panetta v. Crowley,
    460 F.3d 388 (2d Cir. 2006)..........................................................14

Quinn v. City of N.Y.,
    No. 99 Civ 7068, 2003 WL 1090205 (E.D.N.Y. Mar. 12, 2003) ...........................16

Rao v. City of N.Y.,
    No. 14 Civ 7422, 2018 WL 1582289 (E.D.N.Y. Mar. 29, 2018) ...........................16

Reyes v. N.Y. State Office of Children & Family Servs.,
    No. 00 Civ. 7693, 2003 WL 21709407 (S.D.N.Y. July 22, 2003),
    aff'd, 109 F. App'x 466 (2d Cir. 2004)............................................7

Roddini v. City Univ. of N.Y.,
    No. 02 Civ. 4640, 2003 WL 435981 (S.D.N.Y. Feb. 21, 2003) ...........................21

Rothstein v. Carriere,
    373 F.3d 275 (2d Cir. 2004)..........................................................18

Russell v. Smith,
    68 F.3d 33 (2d Cir. 1995) ...................................................18

Santos v. Murdock,
    243 F.3d 681 (2d Cir. 2001)...............................................7

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003).................................................13

Schnabel v. Abramson,
    232 F.3d 83 (2d Cir. 2000).................................................11

Schwab v. Smalls,
    No. 09 Civ. 0061, 2009 WL 10678969 (S.D.N.Y. Dec. 18 2009).........................21

Shumway v. UPS,
    118 F.3d 60 (2d Cir. 1997)...........................................8, 10, 22

Spavone v. NYS Dep't of Corr. Servs.,
    719 F.3d 127 (2d Cir. 2013)................................................24

Spears v. City of N.Y.,
    No. 10 Civ. 3461, 2012 WL 4793541 (E.D.N.Y. Oct. 9, 2012) .........................24

St. Mary's Honor Center v. Hicks,
    509 U.S. 502 (1993)...................................................8, 11

United States v. Ceballos,
    812 F.2d 42 (2d Cir. 1987)................................................14

United States v. Colon,
    250 F.3d 130 (2d Cir. 2001)...............................................15

Weeks v. N.Y. State Div. of Parole,
    No. 00 CV 5865, 2002 WL 32096593 (E.D.N.Y. Nov. 25, 2002),
    aff'd, 78 F. App'x 764 (2d Cir. 2003) ....................................11

Weinstock v. ColumbiaUniv.,
    224 F.3d 33 (2d Cir. 2000)................................................7

Woods v. Enlarged City Sch. Dist. of Newburgh,
    473 F.Supp.2d 498 (S.D.N.Y. 2007)........................................8

## UNITED STATES CONSTITUTION

Fourteenth Amendment ................................................................. 21-22

Amend. XIV

    § 1.............................................................................................................21

**FEDERAL STATUTES**

42 U.S.C.

    § 1981.........................................................................................................21
    § 1983............................................................................................. 16-17, 21
    § 2000e et seq. Title VII .....................................................1, 10, 22, 23

**FEDERAL RULES**

Fed. R. Civ. Proc.

    56.................................................................................................................1
    56(a) ...........................................................................................................6

**STATE STATUTES**

Penal Law

    205.20.........................................................................................................4

**MISCELLANEOUS AUTHORITIES**

Employees' Manual Section 7.13 .......................................................4

Defendants, the New York State Department of Corrections and Community Supervision ("DOCCS"), Superintendent Kathleen Gerbing, Deputy Superintendent of Security Peter Early, Lieutenant James Poston, Investigator Andres Roman, Investigator Lizzette Malave, and Investigator Joseph W. Gallagher ("Defendants"), by their attorney, Barbara D. Underwood, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## PRELIMINARY STATEMENT

Plaintiffs Jose M. Rios and Kimberly M. Marrero, at the relevant times correction officers employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), bring claims of employment discrimination on the basis of national origin under Title VII, 42 U.S.C. 2000e et seq., as well as false arrest, malicious prosecution, and violation of due process and equal protection. Plaintiffs' discrimination claims fail because there is no evidence raising an inference of discrimination and DOCCS has a legitimate non-discriminatory explanation for its actions. The undisputed facts establish that Plaintiffs were arrested and suspended after a search during their entry into Otisville Correctional Facility ("Otisville") revealed that they were carrying medications that appeared to be contraband. The facility had received an anonymous note that stated Officer Marrero was having an inappropriate relationship with an inmate and would be bringing contraband into the facility that Saturday, February 6, 2016. The two investigators who recommended Plaintiffs' arrest are Hispanic and Puerto Ricans, the same race and national origin as the Plaintiffs. Additionally, Plaintiffs have failed to identify any adequate comparators. There is no dispute that Plaintiffs possessed the medications, and given the strong interest in controlling the flow of contraband into a correctional facility in order to maintain safety and security, Defendants had a legitimate reason for their actions. And with respect to Plaintiff Marrero, an

investigation uncovered that she was indeed engaging in inappropriate contact with an inmate and/or an inmate's relatives. This is contrary to DOCCS policy and jeopardizes the security of the facility.

Plaintiffs' false arrest and malicious prosecution claims fail, as probable cause is a complete defense to both claims. The undisputed evidence establishes that Plaintiffs had in their possession an excessive amount of pills, contents of which was unknown, and not in compliance with departmental guidelines. The undisputed facts provide probable cause for their arrests.

With respect to the purported due process claim, that fails as a matter of law. Plaintiffs were afforded due process in connection with arrest and criminal charges through the courts, and Plaintiff Rios was not deprived of due process in connection with his suspension. Indeed, he was reinstated with back pay. Plaintiff Marrero, as a probationary employee, had no property interest in her employment.

The individual Defendants are also entitled to qualified immunity on the false arrest and malicious prosecution claims, as they had at least arguable probable cause, given the anonymous note warning of attempted smuggling, and the suspiciously large number of pills Plaintiffs attempted to bring into a correctional facility. Moreover, some of the defendants were not personally involved. They are also entitled to qualified immunity on the equal protection claim because it was objectively reasonable for them to believe that the only other officer of which they were ware was not materially similarly situated, and that there was a legitimate reason to take the actions they did.

## STATEMENT OF FACTS

On February 5, 2016, the Superintendent's office at Otisville, received a hand written anonymous complaint, alleging that Plaintiff Marrero was having an inappropriate relationship

with an inmate and stating that she would be bringing contraband into the facility on Saturday, which was February 6, 2016. Declaration of Superintendent Kathleen Gerbing ("Gerbing Decl.") ¶ 4; Declaration of Deputy Superintendent of Security ("DSS") Peter Early ¶ 3. Supt. Gerbing gave the note to Deputy Superintendent of Security ("DSS") Peter Early ("Early Decl."). Id. DSS Early forwarded the anonymous note to the DOCCS Office of Special Investigations ("OSI"). Id. OSI determined that the note was not sufficient to approach Officer Marrero. Id., Early Decl. ¶ 4. However, OSI recommended that the facility conduct a search of all employees on the 3-11 p.m. shift on February 6, 2016. Id. DSS Early and the Superintendent agreed with this recommendation and DSS Early ordered the search to take place on that Saturday afternoon. Id.; Gerbing Decl. ¶ 4.

During the course of the shift-wide search on February 6, 2016, Sergeant Thomas Mackiel notified Lt. Poston that he had recovered an open container labeled HCG Activator containing 77 capsules from Officer Marrero. Declaration of James Poston ("Poston Decl.") ¶ 6. Soon thereafter Sgt. Michael Pienczykowski reported to Lt. Poston that he had recovered a small plastic bottle containing four brown gel caps, 8 tan capsules and a small bag containing four tan capsules from Officer Jose Rios. Id., ¶ 9. The only other individual to whom Lt. Poston's attention was called was Officer Thomas Leichliter. Id., ¶ 10. Officer Leichliter had a bottle of store brand analgesics with between four to six pills in the original container. Id. Lt. Poston received no other reports of any other instances of medications or contraband being brought into the facility. Id., ¶ 16-19.

As directed by DSS Early, Lt. Poston contacted OSI Investigator (Inv.) Andres Roman and informed him that contraband had been found on two DOCCS employees. Poston Decl., ¶ 8. Inv. Roman then contacted Inv. Lisette Malave, who in turn called Inv. Joseph Gallagher of the New York State Police. See Declaration of Andres Roman ("Roman Decl.") ¶¶ 7, 8; Declaration of Lisette Malave ("Malave Decl.") ¶ 6; Declaration of Joseph Gallagher ("Gallagher Decl.") ¶ 3.

Invs. Malave and Gallagher arrived at the facility at or about the same time. Malave Decl. ¶ 7; Gallagher Decl. ¶ 8. Lt. Poston briefed them inside the Watch Commander's office. Gallagher Decl. ¶ 9; Malave Decl. ¶ 8; Gallagher Decl. ¶ 11. Inv. Roman was also briefed upon arrival. Roman Decl. ¶ 10; Malave Decl. ¶ 12; Poston Decl. ¶ 11.

Inv. Gallagher decided to arrest Plaintiffs because he was told that the items recovered from Officers Marrero and Rios were contraband. Gallagher Decl. ¶ 12. He was told that employees are permitted to have only the amount of medication necessary for a shift or two in the original container. Id.; Malave Decl. ¶ 11; Roman Decl. ¶ ¶ 12-13. Plaintiffs admit that DOCCS Employees' Manual Section 7.13 provides "Employees, who must, on orders of a physician, take medication during the working hours shall bring into the institution only the dosage which they will be required to use during their tour of duty." Dkt. No. 1 ¶ 46. The common interpretation among DOCCS staff was that this directive applied to the amount of non-prescription medications allowable. Roman Decl. ¶ 18; Gerbing Decl. ¶ 14; Poston Decl. ¶ 7; Malave Decl. ¶ 14; Declaration of Julinda Dawkins ("Dawkins Decl."), Ex. B p. 209:12-15, 21-14, Ex. D p. 53:23-25, 88:16-18, Ex. H p. 35:17-20, Ex. G p. 16:24-25, 16:25-17:2-4, 17:10-14; Dkt. No. 1-1 p. 29. For years, it has served as a guide to what medications would be authorized. Id.

After the briefing, Inv. Gallagher took possession of the officers and the contraband. Gallagher Decl. ¶ ¶ 16-17; Malave Decl. ¶ 15; Poston Decl. ¶ 13. Plaintiffs were transported to SP Greenville in Middletown, New York where Inv. Gallagher interviewed them. Gallagher Decl. ¶ 19; Malave Decl. ¶ 18. Plaintiffs denied bringing contraband in for any inmates or any inappropriate relationship. Gallagher Decl. ¶ ¶ 21-22. Plaintiffs were issued a desk appearance ticket to go to court on February 18, 2016. Gallagher Decl. ¶ 23. Plaintiffs were charged with Penal Law 205.20, promoting prison contraband. Id. The arraignment did not go forward because the

charges had not been filed with the court. Dkt. No. 1 ¶ 54; Dawkins Decl., Ex. A p. 204. Inv. Gallagher did not file the charges because the Assistant District Attorney told him that they were not going forward with the case. Gallagher Decl. ¶ 40. On March 15, 2016, the Orange County District Attorney's Office dismissed the charges of promoting prison contraband in the Second Degree against Officers Marrero and Rios due to insufficient evidence to prove the charge beyond a reasonable doubt. Id. ¶ 38; Dkt. No. 1 ¶ 56.

Plaintiffs were placed on suspension based on the events of February 6, 2016. Early Decl. ¶ 18; Malave Decl. ¶ 30; Dawkins Decl, Ex. B p. 88:10-12, 13-16. They received notification of the suspension and notified that they had to appear for an interrogation with OSI, in the presence of their union representative. Malave Decl. ¶ 30; Dawkins Decl, Ex. B p. 88:10-12, 13-16. Invs. Malave and Roman did not speak to the officers at Otisville or the barracks because the Collective Bargaining Agreement requires that any interrogation by OSI be conducted after a 48 hours' notice and in the presence of a union representative. Dawkins Decl., Ex. L Bill of Rights Roman Decl. ¶ 28; Malave Decl. ¶ 19.

At the OSI interview held on February 12, 2016, Plaintiffs had an opportunity to deny the allegations that formed the basis of their suspension. Malave Decl.¶ 32, Ex. A CONFIDENTIAL DEF. 686. Plaintiffs did so. Id. Shortly thereafter, Officer Rios was reinstated to his position, returned to work on February 26, 2016, and made whole in wage and benefit accrual. Complaint, Dkt. No. 1 ¶ 52; Dawkins Decl., Ex. B p. 24:11-16, 22-24; Dkt. No. 1-1 p. 30. On or about April 5, 2016, Officer Marrero was terminated due to her contact and communication with associates of a facility inmate housed on the unit she worked in violation of the Employees' Manual 2.15, Association with inmate, parolees, or persons engaged in unlawful activities. Dawkins Decl., Ex. C p. 199:2-23, 24-25; Malave Decl. ¶ 37, Ex. C.

DOCCS has a strong security interest in controlling the flow of medication into their facilities. Roman Decl. ¶¶ 30-33, Malave Decl. ¶ ¶ 21-26; Gallagher Decl. ¶ 3. Employees are permitted to bring in only the amount of medication needed for a shift or two so that the excess amount will not fall into the hands of an inmate. Early Decl. ¶ 11; Roman Decl. ¶ 18; Gerbing Decl. ¶ 14; Poston Decl. ¶ 7; Malave Decl. ¶ 14; Dawkins Decl., Ex. B p. 209:12-15, 21-14, Ex. D p. 53:23-25, 88:16-18, Ex. H p. 35:17-20, Ex. G p. 16:24-25, 16:25-17:2-4, 17:10-14; Dkt. No. 1-1 p. 29. If an inmate obtains an officer's medications, the consequences to the inmate could be deadly. Malave Decl. ¶¶ 21-22; Roman Decl. ¶ 31. Additionally, an inmate's possession of a large quantity of unaccounted for pills could lead to extortion and bribery, as well as theft, all of which undermine the safety and good order of the facility. Roman Decl. ¶ 32; Malave Decl. ¶¶ 25, 26. Further, an inmate who obtains an item from an employee can use this as leverage to manipulate and extort that employee into bringing in substances that are more dangerous. Id. He will be able to blackmail the employee. Id. For example, the escape from Clinton Correctional Facility was the result of an inappropriate relationship between DOCCS employees and two inmates. Roman Decl. ¶ 32; Malave Decl. ¶ 26. The inmates were able to manipulate the employees into supplying them with the means to make their escape. Id.

## STANDARD OF REVIEW

Summary judgment may be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). Material facts are those which may affect the outcome of a case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In determining whether a genuine dispute exists, courts resolve factual inferences in favor of the party against whom summary judgment is sought. Id.

The moving party bears the initial burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. See Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). Where the non-moving party has the burden of proof on specific issues, the movant may satisfy its initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine dispute of fact. Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). The opposing party may not avoid summary judgment by relying on conclusory allegations or denials that are unsupported by facts. Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). It is also well settle that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to [employment] discrimination cases than to … other areas of litigation." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). See also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997).

## ARGUMENT

### POINT I

### PLAINTIFFS FAIL TO ESTABLISH DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

To establish a *prima facie* case for national origin discrimination, a plaintiff must prove that: (1) he is a member of a protected class; (2) he was qualified for and satisfactorily performed the duties of his position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. Reyes v. N.Y. State Office of Children & Family Servs., No.

00 Civ. 7693, 2003 WL 21709407, at *7 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d

Cir. 2004); see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Once plaintiff

makes out his *prima facie* case, a presumption of discrimination arises, and the burden of

production shifts to the defendant, who can rebut the presumption by articulating a legitimate, non-

discriminatory reason for the adverse employment action. See McDonnell Douglas Corp. v. Green,

411 U.S. 792, 803 (1973). If the employer makes such a showing, the presumption drops out of

the case and the burden shifts back to the plaintiff to prove that the employer's proffered reason is

a pretext for unlawful discrimination.  See id.

### A. Plaintiffs Cannot Establish a Prima Facie Case of Discrimination Because There Is No Evidence Raising An Inference of Discrimination Surrounding Their Arrests and Suspensions and Officer Marrero's Termination.

Even assuming, for purposes of this motion, that Plaintiffs can prove that they are members

of a protected class, were qualified for the position, and suffered an adverse employment action,

they cannot meet the prima facie case because they cannot show circumstances giving rise to an

inference of discrimination. A plaintiff can establish an inference of discrimination by showing

that the employer treated other similarly situated persons not in Plaintiffs' class more favorably

than the employer treated the Plaintiffs. Woods v. Enlarged City Sch. Dist. of Newburgh, 473

F.Supp.2d 498, 525 (S.D.N.Y. 2007).  To raise an inference of discrimination a plaintiff must show

that the plaintiff and the comparator were similarly situated in "all material respects." See generally

Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); Shumway v. United Parcel Serv.,

Inc., 118 F.3d 60, 63 (2d Cir. 1997).

Here, Plaintiffs have no evidence raising an inference of discrimination. The search was

conducted after the facility received an anonymous note reporting that Officer Marrero was

"fraternizing" with an inmate and was planning to smuggle contraband drugs into the facility.  To

support an inference of discrimination, Plaintiffs claim that there were four white officers who

were found to be in possession of contraband, including pills, who were not arrested or suspended. However, the undisputed evidence shows that any such officers were not materially similarly situated. Sgt. Pilon, the only individual identified by Plaintiffs who possessed the same type of vitamins as Officer Rios, is dissimilar because his pills were in the original container. <u>See</u> Dawkins Decl., Ex. H p.54:2-5; 14:14-21; p. 16:19-22. In addition, neither of the Sergeants who searched Plaintiffs searched Sgt. Pilon. <u>Id.</u> Sgt. Baez searched him. <u>Id.</u>, p. 14:4-8, 17:7-9. Moreover, Sgt. Baez did not discover Sgt. Pilon's vitamins during the search. <u>Id.</u> P. 17:10-20. Lt. Poston had no knowledge that Sgt. Pilon had pills on him. Poston Decl. ¶ 10, Ex. A. Thus, as none of the decision-makers were aware of his vitamins, no inference of differential treatment can arise.

Officer Thompson is also dissimilar from the Plaintiffs because, he did not have vitamins or dietary supplements, but a metal fork. Dawkins Decl., Ex. F p. 28:17-24, 29:8-9, 29:5-18; Ex. J p. 14:3, 25:3. Sgt. Baez also searched Officer Thomas Leichliter. <u>Id.</u>, Ex. F p. 29:5-18; Ex. J p. 14:3. Officer Leichliter, the only comparator Lt. Poston was aware of, also differs from the Plaintiffs because he had a bottle of store brand analgesics with about 4-5 pills in the original container on him – a markedly different situation from the quantity of pills Plaintiffs were attempting to bring into the facility. <u>Id.</u>, p. 24:15-21. He had only enough pills to last a shift. <u>Id.</u>, p. 27:1-21.

Officer Barber, who was searched by Sgt. Mackiel, the same sergeant who searched Officer Marrero, is also not an adequate comparator because she had a bottle with approximately 10-12 Motrin in her possession. <u>Id.</u>, Ex. I p. 23:12-23; 24:2-5. Sgt. Mackiel never notified Lt. Poston of any pills recovered from Officer Barber. He reported Officer Marrero's pills because he believed that 77 capsules were excessive. <u>Id.</u>, Poston Decl. ¶ 6; Dawkins Decl., Ex. D p. 50:12-15, p. 53:23-25, 88:16-18. Sgt. Mackiel considered the pills more than Officer Marrero needed for her shift.

Id., 88:19-21. The last alleged comparator, Officer Youngblood, was not even working on February 6, 2016. Id., Ex. E, p. 9. He was not present for the search, and was not in possession of any pills at Otisville on that date. Id.

Further, any inference of discrimination is undermined by the fact that the OSI investigators were of the same race and national origin as Plaintiffs. See Brooks v. Blank, No. 10 Civ. 8124, 2014 WL 1495774, at *12 (S.D.N.Y. Mar. 31, 2014) ("Courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee") (citations omitted). Invs. Roman and Malave, the individuals who recommended Plaintiffs' arrests, are Hispanic and of Puerto Rican descent. Therefore, there is simply no evidence to support an inference of discrimination that Plaintiffs were arrested or any other action was taken because of their race and/or national origin, and Plaintiffs Title VII claim against DOCCS must be dismissed.

Here, there is nothing in Plaintiffs' depositions that would lead the court to conclude that DOCCS acted with discriminatory intent. See Dawkins Decl. Ex. A-C. Plaintiffs admitted that there were no inappropriate racial or ethnic comments made by defendants or other DOCCS employees in their presence. Plaintiffs have no evidence that defendants acted with any discriminatory animus. Plaintiffs' allegations are the type of unsupported, conclusory allegation[s] that [are] insufficient to defeat a motion for summary judgment. Khan v. Abercrombie & Fitch, Inc., 2003 WL 22149527, at *6 (S.D.N.Y. 2003). See also Shumway, 118 F.3d at 64 (affirming grant of summary judgment where plaintiff presented little more than conclusory statements of no probative value in support of her discrimination claim).

**B. Defendants' Decision Was Legitimately Based and Plaintiffs Have Adduced No Evidence Demonstrating that the Decision Was Pretextual**.

In the event that the Court finds Plaintiffs have satisfied the burden of establishing a *prima facie* case of discrimination, the burden shifts to DOCCS to articulate a legitimate, nondiscriminatory reason for the search, arrest, suspension of plaintiff Rios and the search, arrest, suspension and termination of plaintiff Marrero. An employer sustains its burden by producing any evidence of nondiscriminatory reasons, whether ultimately persuasive or not. See Weeks v. N.Y. State Div. of Parole, No. 00 CV 5865, 2002 WL 32096593, at *4 (E.D.N.Y. Nov. 25, 2002), aff'd, 78 F. App'x 764 (2d Cir. 2003), (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). The employer need not prove by a preponderance of the evidence that the reasons for his action were not discriminatory, but may simply present clear and specific reasons for the action. Gibbs v. Consolidated Edison Co. of N.Y., Inc., 714 F. Supp. 85, 89 (S.D.N.Y. 1989) (internal quotations omitted). If the employer meets its burden, the plaintiff then is required to show that the defendant's stated reason is a pretext for the prohibited discrimination. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). Here, Plaintiffs' national origin claim fails as a matter of law, since there is a legitimate, nondiscriminatory reason for their arrest and suspension, and Officer Marrero's subsequent termination.

Defendants have undisputed evidence of a legitimate non-discriminatory reason to take the actions they did. Plaintiffs were arrested for having contraband. There is no dispute that Plaintiffs possessed the medications, and given the strong interest in controlling the flow of contraband into a correctional facility in order to maintain safety and security, DOCCS had a legitimate reason for its actions. The search of the employees on the 3-11 p.m. shift was triggered after the Superintendent received an anonymous letter indicating that contraband was being brought into the facility. All employees on that shift was searched. None of the defendants were involved in the

actual search of the employees. Sgts. Mackiel, Pienczykowski, and Baez conducted the search. Defendant Lt. Poston only became involved when he was notified that contraband had been located.

As of February 6, 2016, it was commonly understood that employees were permitted to bring in only the amount of medication needed for a shift or two so that the excess amount will not fall into the hands of an inmate. This had routinely been understood to apply to non-prescription medications, as Plaintiff Rios admits. Dawkins Decl., Ex. A p. 209:12-15, 21-24. If an inmate obtains an officer's medications, the consequences to the inmate could be deadly. Additionally, a large quantity of unaccounted for pills in an inmate's possession could lead to extortion and bribery, as well as theft, all of which undermine the safety and good order of the facility. Further, an inmate who obtains an item from an employee can use this as leverage to manipulate and extort that employee into bringing in more dangerous substances. He will be able to blackmail the employee. The escape from Clinton Correctional Facility was the result of an inappropriate relationship between DOCCS employees and two inmates. The inmates were able to manipulate the employees into supplying them with the means to make their escape. Thus, DOCCS had a strong security interest in controlling the flow of medication into its facilities.

Officer Marrero was terminated due to her contact and communication with associates of a facility inmate housed on the unit in which she worked. OSI was able to identify the inmate she was involved by interviewing the inmates on the unit Officer Marrero worked, monitoring inmate phone calls, and subpoenaing Plaintiffs' telephone records. The inmate admitted to Inv. Malave that he had engaged in personal conversation, kissing, embracing, and touching with Officer Marrero. The inmate further admitted to Inv. Malave that he knew Officer Marrero was bringing in weight loss supplements every day for her own use, but that he had access to her lunch bag. Id.

He admitted to removing the bottle from her lunch bag and examining the pills. Id. He admitted to taking food from Officer Marrero's lunch bag and consuming it. Id.

Therefore, summary judgment should be granted and the complaint should be dismissed because Plaintiffs have failed to provide any evidence linking the alleged adverse employment actions to national origin discrimination. Through the accompanying declarations and exhibits, defendants have presented a legitimate non-discriminatory reason for Plaintiffs' arrest and suspension and Officer Marrero's subsequent termination. Plaintiffs cannot rebut this evidence.

**POINT II**

**PLAINTIFFS' FALSE ARREST CLAIM FAILS AS A MATTER OF LAW**

**A.  Probable Cause supports Plaintiff' Arrests on February 6, 2016**

To establish a false arrest claim, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).  In the context of an arrest by a law enforcement officer, the existence of probable cause for the arrest renders the arrest privileged and "is a complete defense to an action for false arrest." See Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Maron v. Cty. of Albany, 166 Fed. Appx. 540, 542 (2d Cir. 2006) (citation omitted).

Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (citation omitted).  The probable cause standard is

objective, and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In determining whether probable cause exists, courts look to the totality of the circumstances as "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987).

Probable cause may exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Bernard v. United States, 25 F.3d 98, 102-03 (2d Cir. 1994). Indeed, once an officer possesses facts sufficient to establish probable cause, he is "neither required nor allowed to sit as prosecutor, judge or jury"; rather, his "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). It is thus "of no consequence that a more thorough or more probing investigation" of the circumstances surrounding the arrest "might have cast doubt upon the situation." Id. at 371 (citation omitted). Indeed, "the fact that an innocent explanation may be consistent with the facts alleged" will not negate probable cause, "and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta v. Crowley, 460 F.3d 388, 395–96 (2d Cir. 2006) (citation omitted); see Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.") (citation omitted).

Here, based on the facts and circumstances available to them at the time, Defendants had probable cause to believe that Plaintiffs were engaged in criminal activity. Probable cause existed to arrest Plaintiffs for promoting prison contraband in the Second Degree. Probable cause is based

on "facts known to the arresting officer at the time of the arrest." <u>Devenpeck</u>, 543 U.S. at 152. Officers Rios and Marrero were both found with contraband on them during a pre-shift search of incoming employees. Inv. Gallagher received reliable information that the items were not allowed into the correctional facility. It was common practice for correction officers to bring in one or two dosages, as needed for their shift. Plaintiffs had more pills than they needed for their shift, and it was understood that a higher quantity, including non-prescription pills, was contraband.

Further, "[a]bsent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." <u>Loria v. Gorman</u>, 306 F.3d 1271, 1288 (2d Cir. 2002); <u>accord</u> <u>United States v. Colon</u>, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible" even where the arresting officer "lacks the specific information to form the basis for probable cause or reasonable suspicion" if "sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."). Here, fellow investigators Malave and Roman informed Inv. Gallagher that the items found in possession of Officer Marrero, a bottle of HCG Activator (dietary supplements), and items recovered from Officer Rios, one bottle of Doterra (dietary supplement) were contraband and that these officers should be criminally charged, based on information provided by DOCCS officials, who would understand what items were contraband in a correctional facility. It seemed reasonable to Inv. Gallagher that DOCCS would not want the inmates to have these pills, especially the weight loss pills because of the high caffeine in it. Inv. Gallagher reasonably relied on the information provided to him Inv. Malave and Inv. Roman in making his determination to arrest the Plaintiffs. He was not required to confirm the contents of the items prior to the arrest.

Plaintiffs' contention that there was no probable cause because the Orange County District Attorney's office declined to prosecute is meritless. A prosecutor's declination to prosecute does not suggest that police officers lacked probable cause. Courts in this Circuit have found that, "a prosecutor's determination not to file an indictment ... does not eliminate probable cause. The existence of probable cause turns on whether there is sufficient evidence that a crime has been committed; the likelihood of proving guilt beyond a reasonable doubt is not relevant." Rao v. City of N.Y., No. 14 Civ. 7422, 2018 WL 1582289, at * 5 (E.D.N.Y. Mar. 29, 2018). Put differently, "[t]he validity of an arrest does not depend on a finding of innocence or any other disposition." Quinn v. City of N.Y., No. 99 Civ. 7068, 2003 WL 1090205, at *4 (E.D.N.Y. Mar. 12, 2003). Here, there was sufficient evidence that a crime had been committed. The anonymous note stated that Officer Marrero was bringing contraband drugs into the facility to give to an inmate on Saturday, February 6, 2016. Officer Marrero was found in possession of a large quantity of unknown substance, which was more than the amount she needed for her shift. The quantity of the pills appeared to corroborate the allegations in the note. As to Officer Rios, he had a large quantity of pills that looked homemade and were not easily identifiable. They were not in their original containers and were packed in sandwich bags. Further, the DA admitted that the decision not to pursue the charges was not based on a lack of probable cause but rather the heightened standards to prove guilt beyond a reasonable doubt.

**B. Defendants Supt Gerbing and DSS Early Were Not Personally Involved in Plaintiffs Arrests**

Plaintiffs cannot establish the personal involvement of Supt Gerbing and DSS Early in the alleged deprivation of his constitutional rights. It is well settled that "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of

New Haven, 720 F.3d 133, 138-139 (2d Cir. 2013). When monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of personal responsibility of the defendant is required. See Monell v. NYC Dep. of Soc. Servs., 436 U.S. 658, 694 (1978). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 566 U.S. 662, 676 (2009). Here, Plaintiffs conclusorily contends that defendants Supt. Gerbing and DSS Early were involved in their arrests. However, plaintiff has not provided evidence that these defendants were personally involved in any alleged deprivation of plaintiffs' constitutional rights. See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) (holding that to prevail on a section 1983 cause of action against an individual, plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant).

Neither DSS Early nor Supt. Gerbing were involved in the plaintiffs' arrest on February 6, 2016. Neither DSS Early nor Supt. Gerbing were at Otisville when plaintiffs were arrested. DSS Early and Supt. Gerbing were not aware that plaintiffs were going to be arrested until after the arrest had taken place. DSS Early did not learn of plaintiffs' arrests until he was contacted by Lt. Poston. Supt. Gerbing learned of the arrests on the evening of February 6, 2016, after they had taken place. Plaintiffs admit to not knowing how Supt. Gerbing and DSS Early were involved in their arrests.

**POINT III**

**PLAINTIFFS' MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW**

To establish a claim for malicious prosecution, a plaintiff must show that: (1) the defendant initiated and continued a criminal proceeding against him; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for that proceeding; and (4) the defendant

commenced the criminal proceeding with malice. <u>Russell v. Smith</u>, 68 F.3d 33, 36 (2d Cir. 1995). As to each of the elements, the burden placed on Plaintiffs alleging malicious prosecution is high. See <u>Rothstein v. Carriere</u>, 373 F.3d 275, 282 (2d Cir. 2004) ("Because accusers must be allowed room for benign misjudgments . . . the law places a heavy burden" on Plaintiffs) (citation omitted).

A plaintiff has the burden of showing that no probable cause existed for the prosecution. "The determination of probable cause in the context of malicious prosecution is essentially the same as for false arrest, except that a claim for malicious prosecution must be evaluated in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of the arrest." <u>Gaston v. City of N.Y.</u>, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (citations omitted). Accordingly, if probable cause existed at the time of the arrest, a plaintiff "must establish that probable cause somehow 'dissipated' between the time of the arrest and the commencement of the prosecution." <u>Id.</u>

Additionally, there is also no evidence that Inv. Gallagher withheld information regarding Plaintiffs' arrest from the prosecutor. Indeed, Inv. Gallagher turned over all the information he had to the DA's office. The DA in rendering its determination did not identify any information that was missing. Rather, the decision not to prosecute was based on laboratory testing submitted by Inv. Gallagher that the substances were not narcotics and Plaintiffs' contention that Inv. Gallagher did not have full information because he was not informed that inmates could purchase vitamins in the commissary is besides the point. That does not permit officers to bring an excessive quantity of pills into the facility. And DOCCS is legitimately concerned that if an officer gives items – even lawful items – to an inmate, it could lead to manipulation, threats or extortion, and jeopardize security.

Finally, a plaintiff must also show that a defendant acted with malice, that is, "due to a

wrong or improper motive, something other than a desire to see the ends of justice served." <u>Espada</u>

<u>v. Schneider</u>, 522 F. Supp. 2d 544, 554 (S.D.N.Y. 2007). Plaintiffs have not provided any evidence

that Defendants acted with malice. Defendants bore no ill will towards the Plaintiffs and there is

no evidence to support such a contention. And, aside from Plaintiffs' repeated arguments that no

probable cause existed for the arrest, Plaintiffs offer no evidence to support any claim that

Defendants acted with "a wrong or improper motive," or "something other than a desire to see the

ends of justice served." <u>See</u> <u>Espada</u>, 522 F. Supp. 2d at 554.

Here, because there was probable cause to prosecute Plaintiffs, there is no evidence that

Defendants withheld information or that a reasonable officer would believe that any such

information was material, and there is no evidence that Defendants acted with malice, Defendants

are entitled to summary judgment. Plaintiffs' malicious prosecution claim fails because they

cannot sustain their burden of showing that no probable cause existed for the arrest, <u>see</u> <u>supra</u>,

Point II, and they have provided no evidence whatsoever that probable cause "dissipate[d] by

discovery of an intervening fact showing that the charges [were] groundless." <u>See</u> <u>Gaston</u>, 851 F.

Supp. 2d at 793. The fact that the DA choose to forego prosecution because the burden proof

beyond a reasonable doubt is far higher than mere probable cause to prosecute a case does not

indicate that the charge was not valid.

<b>POINT IV</b>

<b>PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIM REQUIRES DISMISSAL</b>

"A two-prong test applies to analyze procedural due process claims. First, 'the threshold

issue is always whether the plaintiff has a property interest protected by the Constitution.' Second,

if a protected interest is identified, a court must then consider whether the government deprived

the plaintiff of that interest is identified, a court must then consider whether the government

19

deprived the plaintiff of that interest without due process.'" <u>Barton v. City of Bristol</u>, 294 F. Supp.2d 184, 197 (D.Conn. 2003)(emphasis in original)(quoting <u>Narumanchi v. Bd. of Trustees</u>, 850 F.2d 70, 72 (2d Cir. 1988)). "The essential elements of due process are notice and an opportunity to be heard." <u>Koehler v. New York City</u>, No. 04 Civ. 6929, 2005 WL 1123758, at *6 (S.D.N.Y. May 11, 2005)(quoting <u>Cleveland Bd. Of Educ. V. Loudermill</u>, 470 U.S. 532, 546 (1985)(due process requires only that a public employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."))

Here, Plaintiffs' contention that Defendants violated their constitutional rights because they were not "afforded an opportunity to be heard at a meaningful time prior to defendants' decision to falsely arrest, maliciously prosecute and/or suspend them" is meritless. Dkt. No. 1 ¶ 103. Plaintiffs were provided adequate post-deprivation remedies. Plaintiffs were afforded due process in connection with the arrest and criminal charges through the courts. Plaintiffs were informed that they were being arrested and of the charges. They were interviewed at the state police barracks; issued a desk appearance ticket and given a court date. The charges were never filed because the Orange County DA's office declined to prosecute, so the arraignment on February 18, 2016 was canceled. The DA subsequently dismissed the charges.

Plaintiffs were not deprived of due process in connection with their suspension. Plaintiffs were immediately notified of their suspension, including the reason for the suspension. Plaintiffs had an opportunity to deny the basis for their suspension at an interrogation before OSI where they had union representation. Officer Rios was reinstated within days of the interview with OSI. On February 26, 2016, he returned to work with back pay and accrued leave. Officer Marrero was a probationary employee, and as such, had no property interest in her employment. See <u>Cancel v.</u>

New York City Human Res. Admin., 634 F. App'x 843 (2d Cir. 2015); Finley v. Giacobbe, 79 F.3d 1285, 97-98 (2d Cir. 1996). Nevertheless, Officer Marrero was provided due process in her termination for not completing her probationary period. After Officer Marrero was notified that she was being terminated she requested and was granted an interview with the Director of personnel, Darren Ayotte. At the interview, Officer Marrero was informed that OSI had confirmed her contact with inmate and inmates' family. Plaintiff then requested a further review of her termination, which was denied. Officer Marrero took no further action to seek reinstatement. This opportunity to be heard suffices, even if Plaintiff Marrero had a property interest in her job, which she did not. Thus, Plaintiffs have failed to establish a procedural due process violation, and Defendants are entitled to summary judgment on this claim.

## POINT V

### PLAINTIFF'S SECTION 1981 CLAIM IS BARRED BECAUSE SECTION 1983 IS THE EXCLUSIVE REMEDY AGAINST STATE ACTORS

Any Section 1981 claim must be dismissed because, in Jett v. Dallas Independent School District, 491 U.S. 701, 732 – 35 (1989), the Court held that Section 1983 was the exclusive remedy for violation of the rights provided in Section 1981 against State actors.   See also Schwab v. Smalls, No. 09 Civ. 0061, 2009 WL 10678969, at *2-3 (S.D.N.Y. Dec. 18 2009); Roddini v. City Univ. of N.Y., No. 02 Civ. 4640, 2003 WL 435981, at *5 n. 7 (S.D.N.Y. Feb. 21, 2003).

## POINT VI

### PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no state shall…deny to any person within its jurisdiction the equal protection of the laws," U.S. Cons. Amend. XIV, § 1, requires the government to treat all similarly situated individuals alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Equal Protection claims brought

by public employees for sex and national origin discrimination are analyzed under the same standards as Title VII claims. <u>Annis v. City of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998). "To be 'similarly situated, the individuals with whom a plaintiff attempts to compare himself must be similarly situated in all material respects." <u>Shumway v. UPS</u>, 118 F.3d 60, 64 (2d Cir. 1997); <u>see Latrieste Restaurant v. Village of Port Chester</u>, 188 F.3d 65, 69 (2d Cir. 1999) (<u>Shumway</u> similarly situated language employed in Equal Protection claim).

To establish a violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs must show that they were treated differently than similarly situated employees at Otisville as a result of intentional or purposeful discrimination. However, Plaintiffs' personal opinion that such treatment was motivated by discriminatory intent is not enough. Here, as discussed supra in Point I, there is no evidence of disparaging comments concerning Plaintiffs' national origin or race, or other evidence of discriminatory intent. Plaintiffs also have no evidence that comparators were treated differently. Defendants here were not aware of any contraband allegedly possessed by the officers Plaintiffs refer to, and thus this could not reflect discriminatory intent.  Plaintiffs have no evidence aside from speculation of any such knowledge. None of the four white officers identified as being similarly-situated had the quantity of pills recovered from the Plaintiffs. Two had different categories of pills, one had a metal fork, another's pills went undetected and still another was not working on the date of the search.  <u>Shumway</u>, 118 F.3d at 64.

Indeed, the only officer of whom Defendants are aware who was found with medication on the same date possessed only five or six pills of an analgesic, as needed for his shift. Lt. Poston and DSS Early were not aware that any Caucasian employee, other than Officer Leichliter, had been allowed into Otisville on February 6, 2016 with any pills. The pills Officer Leichliter had were identifiable, in the original container, and only enough for his shift. Lt. Poston and DSS Early

were not aware that any Caucasian employee was allowed into Otisville on February 6, 2016 with any unknown substances, or contraband. Supt. Gerbing, Invs. Malave, Roman, and Gallagher were not aware that any Caucasian employees was allowed into Otisville on February 6, 2016 with any pills, unknown substances, or contraband. Thus, there is no evidence of discriminatory intent on the part of any Defendant, and summary judgment should be granted for the individual Defendants on Plaintiffs' Equal Protection claim, for much the same reasons that the Title VII claim fails.

## POINT VII

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

An arresting officer is entitled to qualified immunity on a false arrest claim "if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera 361 F.3d at 743. Accordingly, false arrest claims against officers will not lie when "arguable probable" existed for an arrest. Id. Arguable probable cause to arrest exists "unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." Figueroa v. Mazza, 825 F.3d 89, 99-100 (2d Cir. 2016) (citations omitted). The standard thus "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Denial of summary judgment is appropriate, therefore, only where an officer's judgment "was so flawed that no reasonable officer would have made a similar choice." See Lennon v. Miller, 66 F.3d 416, 424-25 (2d Cir. 1995).

An officer who relies on information provided to him by a fellow law enforcement officer is entitled to qualified immunity. See Anthony v. City of N.Y., 339 F.3d 129, 138 (2d Cir. 2003) (noting that "[p]lausible instructions from a superior or fellow officer support qualified immunity

23

where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists" (internal quotation marks and citation omitted)); Bleiwas v. City of N.Y., No. 15 Civ. 10046 , 2017 WL 3524679, at *4 (S.D.N.Y. Aug. 15, 2017) (finding that arresting officers were entitled to qualified immunity where they relied on a search warrant and their sergeant's instructions); Spears v. City of N.Y., No. 10 Civ. 3461, 2012 WL 4793541, at *7 (E.D.N.Y. Oct. 9, 2012) (finding that officers who detained plaintiff at hospital were entitled to rely on the probable cause determinations of their fellow officers, who had personally observed plaintiff possess and ingest cocaine, despite some medical tests suggesting that plaintiff did not have contraband in his system).

Defendants Supt. Gerbing and DSS Early are also entitled to qualified immunity on the additional ground that plaintiff failed to establish that they were personally involved in Plaintiffs' arrests, or was in any way aware that Plaintiffs were going to be arrested. See Iqbal, 566 U.S. at 672-673; Spavone v. NYS Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).

Officers are entitled to qualified immunity on malicious prosecution claims where "arguable probable cause" existed to charge the plaintiff for the crime at issue. Jean v. Montina, 412 Fed. Appx. 352, 354 (2d Cir. 2011). Arguable probable cause to charge exists where, "accounting for any new information learned subsequent to an arrest, it was not manifestly unreasonable" for the plaintiff to be charged with the crime in question. Id. (citation omitted). Here, even if probable cause did not exist for Plaintiff's arrest—which it did—the false arrest claims should be dismissed because arguable probable cause existed for the arrest. Defendants' judgment in determining that an arrest was an appropriate was clearly not "so flawed that no reasonable officer would have made a similar choice." See Lennon, 66 F.3d at 424-25. The Defendants objectively reasonably believed that the quantity of pills of an unknown substance

constituted contraband and the NYSP Defendants reasonably relied on DOCCS' officials' conclusion that the pills were contraband.

Defendants are also entitled to qualified immunity on Plaintiffs' malicious prosecution claim because Plaintiffs have pointed to no "new information learned subsequent to Plaintiff's arrest," that would negate probable cause for the prosecution, see Jean, 412 Fed. Appx. at 354, and it was in no way "manifestly unreasonable" for Plaintiffs to be charged with promoting prison contraband. Id.

The individual Defendants are also entitled to qualified immunity on Plaintiffs' Equal Protection and Due Process claims. They reasonably concluded that Plaintiffs should be arrested for promoting prison contraband, and that the consequent employment actions should follow, and did not violate Plaintiffs' rights.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted, and Plaintiffs' claims against Defendants should be dismissed in their entirety.

Dated: New York, New York
June 27, 2018

BARBARA D. UNDERWOOD
Attorney General of the State of New York
Attorney for Defendants
By:
       _/s/_
_____
Julinda Dawkins
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8118
Julinda.Dawkins@ag.ny.gov